Stephen D. Spencer (8913)
SPENCER LAW OFFICE, LLC
Attorney for Plaintiff
999 E. Murray-Holladay Rd.
Suite 200A
SLC, UT 84117
Telephone: (801) 268-4994
FAX: (801) 268-1241
Email: steve@stevespencerlaw.com

FILED
U.S. DISTRICT COURT

2012 JUL 17 P 3: 12

DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LEO A. ARCHULETTA;<br>VIOLA E. ARCHULETTA,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>CITY OF SOUTH SALT LAKE;<br>UNIFIED POLICE DEPARTMENT;<br>DARREN CARR; OFFICER LAVATO;<br>CHAD LEETHAM; JAKE PARKER;<br>JOSEPH STUDSTRUP; JOSEPH SUTERA;<br>JOHN DOES 1-10.<br><br>　　　　Defendants. | **COMPLAINT**<br><br><br><br><br><br>Case: 2:12cv00703<br>Assigned To : Campbell, Tena<br>Assign. Date : 7/17/2012<br>Description: Archuletta et al v. City of<br>South Salt Lake et al |

　　　　COME NOW Plaintiffs, by and through counsel, and for a cause of action against

Defendants, allege as follows:

Parties and Jurisdiction

　　　　1.　　Plaintiffs are residents of Salt Lake County, State of Utah.

　　　　2.　　South Salt Lake City is a political subdivision of the State of Utah and controls

and operates the South Salt Lake City Police Department.

3. The Unified Police Department is a law enforcement agency under the laws of the state of Utah, has jurisdiction in Salt Lake County, Utah, with its principal place of business in Salt Lake County, Utah.

4. Relevant events alleged herein occurred in Salt Lake County, State of Utah.

5. Darren Carr is peace officer in the state of Utah and is employed in a supervisory position by the South Salt Lake City Police Department.

6. Chad Leetham, Jake Parker, Joseph Studstrup, and Joseph Sutera, are peace officers in the state of Utah and are employees of the South Salt Lake City Police Department.

7. Officer Lavato is a peace officer in the state of Utah and is an employee of the Unified Police Department.

8. Relevant events alleged herein occurred in Salt Lake County, Utah.

9. Federal questions predominate in this action. Relevant events alleged herein give rise to a cause of action pursuant to 42 U.S.C. Sec. 1983.

10. Based upon the location of the relevant events and the location of the agency or agencies employing the individual Defendants, jurisdiction and venue is proper in the District of Utah.

Background

11. Plaintiffs are the resident owners of the home and real property at 3555 South, 1300 East, in Salt Lake County.

12. On April 12, 2012, Defendants were attempting to locate and to arrest one Robert B. Maestas, whom Defendants suspected of committing a felonious sex offense involving a 12-year-old victim approximately two years prior to that time.

13. The felonious sex offense believed to have been committed by Robert Maestas had occurred at 3684 South and 700 East in Salt Lake County.

14. The residence and real property at 3684 South and 700 East in Salt Lake County was the home of Robert Maestas' mother at relevant times. On May 12, 2012, Robert Maestas was a resident at 3684 South, 700 East.

15. Robert Maestas was not a resident at Plaintiff's residence, 3555 South, 1300 East on May 12, 2012 or at any relevant times hereto.

16. By March 23, 2012, Defendants or the police agencies that employed the individual Defendants had become aware of the allegations of the relevant offense committed by Robert Maestas.

17. On April 12, 2012, Defendants went to Plaintiffs' residence at 3555 South, 1300 East, without an arrest warrant for Robert B. Maestas. Defendants also did not have any search warrant for the Plaintiffs' residence.

18. Upon arriving at Plaintiffs' residence, Joseph Studstrup went to a bedroom window on the south side of the residence, from which he could see Viola Archuletta sitting on a bed and talking on the telephone. Joseph Studstrup repeatedly ordered Viola Archuletta to go to an outside door to speak with police officers. Such actions by Joseph Studstrup were an official show of authority from Joseph Studstrup.

19.     Being prompted by such official show of authority, Viola Archuletta went to an entrance where she spoke to Joseph Studstrup across the threshold of the doorway. That conversation ended and Viola Archuletta closed the door and went back into the residence.

20.     Defendants then spoke to another individual outside the residence, who gave them reason to believe that Viola Archuletta had misled Joseph Studstrup about whether there were two or three residences within that structure.

21.     In response to the foregoing, and in response to information that caused them to believe that Viola Archuletta had misled them about whether Robert Maestas was present then and there, Darren Carr and Jake Parker banged loudly on the exterior door and again demanded that Viola Archuletta come to the door. In so doing, Carr and Parker coerced Plaintiff through making an official display of authority and Viola Archuletta was prompted by that show of their official authority.

22.     After Viola Archuletta again answered the door, Darren Carr and Jake Parker reached across the threshold of the doorway and laid hands on Viola Archuletta, arresting her for obstruction of justice while she was inside the residence.

23.     Viola Archuletta did not cross the threshold of the doorway herself, to the outside, prior to the moment that Defendants laid hands on her. Viola Archuletta looked around the door, which was barely open, in an attempt to conceal the inside of the residence. Therefore, Mrs. Archuletta did not seek to escape an arrest that was set in motion in a public place by escaping to a private place.

24.     The other named or unnamed Defendants then entered the residence and began to

search for Robert Maestas.

25. Jake Parker, with the assistance of other named or unnamed Defendants, located and arrested Robert Maestas inside the attic the residence.

26. After arresting Robert Maestas, Jake Parker continued to order that any other occupants of the residence come out of the attic and show themselves. In doing so, Jake Parker was uncertain whether there were any other occupants.

27. Approximately five to ten minutes following the arrest of Robert Maestas, a K-9 unit arrived at the scene: Officer Lavato together with a police dog under his control.

28. Officer Lavato caused the police dog to search the attic of the residence more than ten minutes following the arrest of Robert Maestas. The dog immediately located Plaintiff Leo Archuletta in the attic and attacked him viciously, thereby causing Plaintiff serious injuries, including but not limited to an injury to Plaintiff's lower left leg, which may yet necessitate the amputation of that limb.

29. The foregoing acts of causing a police dog to attack Leo Archuletta was not necessary or appropriate under the circumstances to ensure the safety of those police officers on the scene.

Claims Against Darren Carr

30. By his act of coercing Viola Archuletta to answer the door under a show of official authority and also of reaching across the threshold of the doorway into Plaintiff's residence to lay hands on her, Darren Carr made warrantless entry into Plaintiff's residence without lawful justification.

31. By his act of reaching across the threshold of the doorway into Plaintiff's residence to lay hands on her, Darren Carr made warrantless arrest within Plaintiff's residence where his presence was otherwise unlawful.

32. No recognized exception for hot pursuit or other exigent circumstances applied to Darren Carr's conduct under the existing circumstances.

33. Darren Carr continued in the warrantless search of Plaintiff's residence in the absence of exigent circumstances, or in the alternative, under exigent circumstances that were created by Darren Carr's conduct alone.

Claims Against Officer Lavato

34. Officer Lavato made warrantless entry into the Plaintiffs' residence without exigent circumstances or other lawful justification.

35. Officer Lavato caused a police dog under his control to attack Leo Archuletta without lawful justification.

36. The use of force in so doing was excessive and unjustified under the circumstances.

37. There was no continuing danger to officer safety under a protective sweep theory or other lawful justification for the arrest of Leo Archuletta at the time it was made.

Chad Letham

38. Chad Leetham made warrantless entry into the Plaintiff's residence without exigent circumstances or other lawful justification.

Jake Parker

39. By his act of reaching across the threshold of the doorway into Plaintiff's residence to lay hands on her, Jake Parker made warrantless entry into Plaintiff's residence without lawful justification.

40. By his act of reaching across the threshold of the doorway into Plaintiff's residence to lay hands on her, Jake Parker made warrantless arrest within Plaintiff's residence where his presence was otherwise unlawful.

41. No recognized exception for hot pursuit or other exigent circumstances applied to Jake Parker's conduct under the existing circumstances.

42. Jake Parker continued in the warrantless search of Plaintiff's residence in the absence of exigent circumstances. In the alternative, under exigent circumstances that were created by Jake Parker's conduct alone or the conduct of other Defendants with whom he acted.

Joseph Sutera

43. Joseph Sutera made warrantless entry into the Plaintiff's residence without exigent circumstances or other lawful justification.

John Does 1-10

44. The unnamed Defendants are other individuals who acted together with the named Defendants in violating Plaintiff's Fourth Amendment Rights under the Constitution of the United States.

South Salt Lake City and Unified Police Department

45. South Salt Lake City was negligent in its hiring, retraining, and retention of various individually named Defendants. Such negligence is demonstrative of the official policy or custom of a local unit of state government and other conduct that displayed a deliberate indifference toward the rights of Plaintiffs.

46. Unified Police Department was negligent in its hiring, retraining, and retention of various individually named Defendants. Such negligence is demonstrative of the official policy or custom of a local unit of state government and other conduct that displayed a deliberate indifference toward the rights of Plaintiffs.

## First Cause of Action: 42 U.S.C. 1983

47. As a result of the foregoing events, Plaintiffs constitutionally protected liberty interests under the Fourth Amendment Rights under the Constitution of the United States, to be free from unreasonable search and seizure, have been violated by actions performed by the various Defendants while they acted under color of state law.

48. Such deprivation resulted from the official policy or custom of a local unit of state government or arose from gross negligence or state government or other conduct of state government that displayed a deliberate indifference toward the rights of Plaintiffs.

*Wherefore, Plaintiffs pray for relief as hereinafter set forth.*

## First Part: Warrantless Entry

49. Plaintiffs re-allege and incorporate by reference the allegations heretofore set forth as though fully set forth herein.

50. Through their warrantless entry into the residence under the existing circumstances, the individual Defendants deprived Plaintiffs of their constitutionally protected rights as guaranteed by the Fourth Amendment to be free from unreasonable search and seizure.

51. No exigent circumstances other than those that may have been created by the Defendants' unlawful acts were present to justify such warrantless entry.

*Wherefore, Plaintiffs pray for relief as hereinafter set forth.*

## Second Part: Excessive Force

52. Plaintiffs re-allege and incorporate by reference the allegations heretofore set forth as though fully set forth herein.

53. Through his actions described herein, Defendant Officer Lavato's use of force against Leo Archuletta was not objectively reasonable in light of the existing circumstances.

54. The actions of Defendant Lavato in using excessive force deprived Leo Archuletta of his constitutionally protected right to be free from the use of excessive force as guaranteed by the Fourth Amendment.

55. As a result of the excessive force used in the arrest of Leo Archuletta, Mr. Archuletta has suffered catastrophic injury, which has in turn caused him pain and suffering and loss of enjoyment of life.

*Wherefore, Plaintiffs pray for relief as hereinafter set forth.*

## Third Part: Unreasonable Detention or Arrest

56. Plaintiffs re-allege and incorporate by reference the allegations heretofore set forth as though fully set forth herein.

57. Through his acts as described herein, Joseph Studstrup arrested Viola Archuletta in her home without a warrant and without probable cause.

58. Through his acts as described herein, Darren Carr and Jake Parker arrested Viola Archuletta in her home without a warrant and without probable cause.

59. Through his acts as described herein, Officer Lavato and Jake Parker arrested Leo Archuletta without a warrant and without probable cause.

60. There was no probable cause for the arrest or detention of Plaintiffs. The arrest and detention was not objectively reasonable in light of the facts and circumstances.

61. The actions of Defendants in arresting or detaining Plaintiffs deprived Plaintiffs of their constitutionally protected rights as guaranteed by the Fourth Amendment to be free from unreasonable seizure.

*Wherefore, Plaintiffs pray for relief as hereinafter set forth.*

### Fourth Part: Liability of South Salt Lake City and Unified Police

62. Plaintiffs re-allege and incorporate by reference the allegations heretofore set forth as though fully set forth herein.

63. Through their acts and omissions that resulted in the foregoing events, the officials of the named police agencies were grossly negligent in their hiring, assignment, retention, entrustment, training, and supervision of the various individually named Defendants or otherwise acted with deliberate indifference to the rights of Plaintiffs.

64. The failure of the named police agencies or the political subdivisions of the state of Utah that control them to exercise reasonable prudence in the hiring, assignment, retention,

training, and supervision of the individually named Defendants demonstrates gross negligence or a deliberate indifference toward the rights of Plaintiffs by the police agencies or the political subdivisions of Utah that control them.

*Wherefore, Plaintiffs pray for relief as hereinafter set forth.*

### Second Cause of Action: Assault and Battery

65. Plaintiffs re-allege and incorporate by reference the allegations heretofore set forth as though fully set forth herein.

66. Through their actions as described herein, Darren Carr and Jake Parker placed Viola Archuletta in imminent fear of an offensive bodily touching and did in fact commit such offensive bodily touching.

67. Through their actions as described herein, Officer Lavato, acting under the direction of Jake Parker, Darren Carr, and other named or unnamed Defendants, placed Leo Archuletta in imminent fear of an offensive bodily touching and did in fact commit such offensive bodily touching.

68. As a result of Officer Lavato causing the police dog under his control to attack Leo Archuletta, Defendants have caused Leo Archuletta to suffer serious bodily injury; pain and suffering; and loss of the enjoyment of life.

*Wherefore, Plaintiffs pray for relief as hereinafter set forth.*

### Third Cause of Action: Respondeat Superior Liability of Police Agencies

69. Plaintiffs re-allege and incorporate by reference the allegations heretofore set forth as though fully set forth herein.

70. The acts of assault and battery committed upon Plaintiffs by Defendants was done within the scope of the individual Defendant's employment by the named police agencies.

71. Such acts were done in the furtherance of the employer's interests. The employment was such that the use of such force could be contemplated. The employees committed such acts within the scope of authority given to them by the employer.

*Wherefore, Plaintiffs pray for relief as hereinafter set forth.*

### Prayer for Relief

WHEREFORE, Plaintiffs pray for relief as follows:

72. On Viola Archuletta's claim against Joseph Studstrup for her unlawful arrest or detention, for the amount of one hundred ($100) dollars.

73. On Viola Archuletta's claims against Darren Carr and Jake Parker for the unlawful entry into the residence and the unlawful arrest occurring therein, for the amount of five thousand ($5,000) dollars, jointly and severally.

74. On Viola Archuletta's claims against the other named or unnamed Defendants for the unlawful entry into the residence and search of the residence, for the amount of five thousand ($5,000) dollars, jointly and severally.

75. On Leo Archuletta's claims against the other named or unnamed Defendants for the unlawful entry into the residence and search of the residence, for the amount of five thousand ($5,000) dollars, jointly and severally.

76. On Leo Archuletta's claim against Officer Lavato and the other named or unnamed Defendants for the unlawful use of excessive force and unlawful arrest and for his pain

and suffering and loss of enjoyment of life, for the amount of five hundred thousand ($500,000) dollars. In the alternative, if such injuries are to result in the amputation of Leo Archuletta's lower left leg by the time of trial, in the amount of one million ($1,000,000) dollars.

77. For attorney's fees as provided by law.

78. For costs of suit as provided by law.

79. For such other relief as the Court deems appropriate.

DATED this __17__ day of July, 2012.

Stephen D. Spencer
Attorney for Plaintiffs